UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DION SCOTT BUCKELEW,<br>CDCR #BS-1324,<br><br>                              Plaintiff,<br><br>       vs.<br><br>CAPTAIN LOVELACE, et al.,<br><br>                              Defendants. | Case No.:  23-cv-83-MMA (JLB)<br><br>**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND PURSUANT TO 28 U.S.C. § 1915A(b)** |

On January 13, 2023, Plaintiff Dion Scott Buckelew, a state prisoner proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983, along with a motion to proceed in forma pauperis.  Doc. Nos. 1–2.  On January 20, 2023, the Court denied Plaintiff's *in forma pauperis* motion.  Doc. No. 3.  On February 15, 2023, Plaintiff paid the filing fee in full.  Doc. No. 4.

**I. SCREENING PURSUANT TO §§ 1915(e)(2) & 1915A(b)**

**A.     Standard of Review**

Because Plaintiff is a prisoner his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. § 1915A(b), under which the Court must *sua sponte* dismiss a prisoner's complaint, or any portion of it, which is frivolous, malicious, fails to state a

claim, or seeks damages from defendants who are immune. *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). Section 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012).

Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting that standard. *Id.*

"To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

**B.     Analysis**

The Complaint presents five causes of action against twelve Defendants in their individual capacities, all employed by the San Diego County Sheriff's Department.[1] Doc. No. 1 at 2–10. Plaintiff alleges that while in the custody of the San Diego County Sheriff from February 2020 until March 2022, he was subjected to the excessive use of force, denial of medical care, unconstitutional conditions of confinement, denial of due process, loss of personal and legal property, and denial of access to the courts. *Id*.

---

[1] The claims brought in this action were dismissed from a prior case without prejudice to Plaintiff to file in this action. *See Buckelew v. Gore, et al.*, So.Dist.Ca. Civil Case No. 21cv0810-LL (NLS), Order filed Oct. 27, 2022, Doc. No. 55 at 2.

*1.     Count One*

In count one of the Complaint Plaintiff alleges that on or about February 13, 2020, after he had fallen out of his wheelchair in medical distress, Defendant San Diego County Sheriff's Deputy Banks "maliciously verbally and physically assault[ed] plaintiff by picking plaintiff up by his shirt collar, throwing plaintiff back into his wheelchair and calling the plaintiff a 'fucking piece of shit' several times while plaintiff was in medical distress." Doc. No. 1 at 6. "Banks then chained the plaintiff as tight as Banks could get it cutting off circulation causing extreme pain and suffering, anxiety, extreme panic and mental duress. Plaintiff was hospitalized for two weeks." *Id.* Plaintiff claims Defendant San Diego County Sheriff's Deputy Captain Lovelace, who "is charged with employee training and direct supervision of subordinates," "failed to properly train Deputy Banks, refused to follow proper policies and procedures, [and] refused to abide by grievance policies and procedures." *Id.* at 2, 6.

The Cruel and Unusual Punishments Clause of the Eighth Amendment forbids prison officials from "the unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). An Eighth Amendment violation includes an objective prong, which requires the alleged deprivation to be "objectively, sufficiently serious," and a subjective prong, which requires allegations that the prison official had a "state of mind [] of 'deliberate indifference' to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see id.* at 837 (holding that a prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health and safety;" . . . he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").

/ / /

It is not clear from the face of the Complaint whether Plaintiff was a pre-trial detainee at the time of the events alleged in the Complaint. If he was a pre-trial detainee, then an objective test under the Fourteenth Amendment rather than a subjective Eighth Amendment analysis applies. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) (noting that the Due Process Clause of the Fourteenth Amendment is applicable to claims of pre-trial detainees rather than the Eighth Amendment because "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions"); *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) ("[A] pretrial detainee can prevail [on an excessive use of force claim] by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose."); *see also Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018) (in order to state a § 1983 claim for unconstitutional conditions of confinement a pre-trial detainee must plausibly allege that: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved - making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused plaintiff's injuries"). A determination as to which test applies is unnecessary at this time because, for the following reasons, Plaintiff has failed to state a claim upon which relief may be granted under either pleading standard.

The allegations that Defendant Banks verbally harassed and abused Plaintiff fail to state an Eighth or Fourteenth Amendment claim under § 1983. *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998) (verbal harassment is not cognizable as a constitutional deprivation under § 1983); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (vulgar language directed at inmate does not state a claim for a constitutional claim under § 1983).

Plaintiff's allegations that after he fell out of his wheelchair in medical distress Defendant Banks placed him back in his wheelchair, strapped him in with restraints that were too tight, and that Plaintiff spent a week in the hospital, also fail to state an Eighth or Fourteenth Amendment claim.  Plaintiff does not allege Defendant Banks caused the injury which required his hospital stay.  The objective prong of an Eighth or Fourteenth Amendment violation looks at whether "the deprivation alleged" is "sufficiently serious" and poses "a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.  Plaintiff merely alleges Defendant Banks helped him back into his wheelchair and strapped him in "as tight as Banks could get it cutting off circulation causing extreme pain and suffering, anxiety, extreme panic and mental duress." Doc. No. 1 at 6.  Plaintiff does not allege he informed Defendant Banks that the straps were so tight so as to cause him distress, or how long the distress lasted, or provide any factual allegations which show Banks was in possession of facts from which he could have drawn a reasonable inference that a substantial risk to Plaintiff's health or safety existed as a result of the tightness of the straps, or actually drew such an inference, so as to state an Eighth Amendment claim. *See McMillian*, 503 U.S. at 6–7 (in order to state an Eighth Amendment claim, Plaintiff must plausibly allege the force was not applied in good faith but "maliciously and sadistically to cause harm."); *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (holding that in order to plausibly allege deliberate indifference to a substantial risk to an inmate's health or safety under the Eighth Amendment, a plaintiff must plausibly allege "the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference'") (quoting *Farmer*, 511 U.S. at 837).

Neither has Plaintiff stated a Fourteenth Amendment claim against Defendant Banks.  Plaintiff alleges he was in medical distress after falling out of his wheelchair when Banks picked him up and placed him back in the wheelchair and strapped him in to prevent another fall, but there are no factual allegations that a reasonable person would have known the straps were so tight as to go beyond what was necessary to prevent him

from falling out of his wheelchair again, or any facts which plausibly allege the subjective "anxiety, panic and mental distress" he experienced was made known to or should have been obvious to Defendant Banks.  Accordingly, Plaintiff has not plausibly alleged "objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose."  *Kingsley*, 576 U.S. at 398; *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) (reasonableness is touchstone of Fourteenth Amendment analysis); *Gordon*, 888 F.3d at 1125 (holding that in order to state a § 1983 claim for unconstitutional conditions of confinement a pre-trial detainee must plausibly allege that: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved - making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused plaintiff's injuries").

With respect to the allegations that Defendant Captain Lovelace "failed to properly train Deputy Banks, refused to follow proper policies and procedures, [and] refused to abide by grievance policies and procedures," Plaintiff has also failed to state a claim. Prisoners have no constitutional right to specific grievance procedures. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *see also Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (citation omitted) ("There is no legitimate claim of entitlement to a grievance procedure.").  As to the allegation that Defendant Captain Lovelace failed to properly train Defendant Deputy Banks, municipal liability arising from an alleged failure to train jail staff requires allegations "that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Rodriguez v. City of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018), quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).  Individual liability

based on a failure to train requires factual allegations of the individual's participation in the alleged constitutional violation. "[A] plaintiff must plead that each Government official defendant, through the official's own individual actions, has violated the constitution." *Iqbal*, 556 U.S. at 676-77 (rejecting argument that "a supervisor's mere knowledge of his subordinate's [unconstitutional actions] amounts to the supervisor's violating the Constitution.") "A supervisory official may be held liable under § 1983 only if 'there exists either (1) his or her personal involvement in the constitutional violation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir. 2018) (quoting *Starr v. Baca,* 652 F.3d 1202, 1207 (9th Cir. 2011)). "In a section 1983 claim, a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009) (internal quotation marks omitted).

Plaintiff's allegation of a single incident of being strapped into his wheelchair too tightly to prevent him falling out again fails to state a failure to train claim because "proof of a single incident of unconstitutional activity," or even a series of "isolated or sporadic incidents" will not give rise to § 1983 municipal liability. *Grant v. County of Los Angeles*, 772 F.3d 608, 618 (9th Cir. 1996). Neither has Plaintiff set forth factual allegations identifying individual acts or omissions by Defendant Captain Lovelace which resulted in a constitutional violation. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.").

Accordingly, Plaintiff's claims against Defendants Banks and Lovelace in count one of the Complaint are dismissed *sua sponte* for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1); *Watison*, 668 F.3d at 1112.

/ / /

    2.    *Count Two*

Plaintiff alleges in count two that on or about June 7, 2021, Defendant San Diego County Sheriff's Deputy Bastain yelled, screamed and spit in his face on four occasions within a fifteen-minute span. Doc. No. 1 at 7. When Plaintiff asked to see a Sergeant or Lieutenant, Defendant Bastain pushed Plaintiff in his wheelchair "into a non A.D.A. complaint side cell as punishment." *Id*. Defendant San Diego County Sheriff's Deputy Sergeant Kimberly, who "is a direct supervisor of deputies at San Diego Central" jail, arrived and instructed Plaintiff to file a grievance. *Id*. at 3, 7. Defendant Bastain then pushed Plaintiff back to his cell and placed him on a 78-hour lockdown "without due process. Void a hearing." *Id*. at 7. Defendant San Diego Sheriff's Deputy Sergeant Rodriguez investigated the grievance and determined it had no merit. *Id*. Plaintiff appealed the denial of his grievance to Defendant San Diego County Sheriff's Deputy Captain Darnell, who is responsible for "employee training and direct supervisions of subordinates," but received no response. *Id*. at 2, 7. Defendant San Diego County Sheriff's Deputy Lieutenant Navarro, who is "charged with training his subordinates," said he would look into the incident and the grievance but never responded. *Id*.

With respect to the allegations of the suggestion to file a grievance by Defendant Kimberly, the denial of the grievance by Defendant Rodriguez, the failure of Defendant Navarro to respond to the grievance, and the failure of Defendant Darnell to respond to Plaintiff's appeal of the grievance, Plaintiff has not stated a claim because as noted above there is no federal constitutional right to a grievance procedure. *Ramirez*, 334 F.3d at 860; *Mann*, 855 F.2d at 640. The allegation that Defendant Bastain locked Plaintiff down for 78 hours without a hearing fails to state a due process claim because it is entirely conclusory. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," fail to state a claim for relief.)

The allegations that Defendant Bastain yelled, screamed and spit in Plaintiff's face on four occasions within a fifteen-minute span and pushed Plaintiff in his wheelchair "into a non A.D.A. complaint side cell as punishment," also fail to state a claim. Plaintiff

provides no details regarding why Defendant Bastain was yelling or screaming, nor does he detail the nature of the spital in his face. "Not every malevolent touch by a prison guard gives rise to a federal cause of action" and "[a]n inmate who complains of a push or shove that causes no discernable injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010) (citations and quote marks omitted). In order to state an Eighth Amendment claim, Plaintiff must plausibly allege "force was [not] applied in a good-faith effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm," *McMillian*, 503 U.S. at 6–7, which he has failed to do because there are no details regarding his interaction with Defendant Bastain, in particular regarding the severity of his actions or their purpose. *Id.*; *see Oltarzewski*, 830 F.2d at 139 (verbal harassment or abuse does not state a claim for a constitutional deprivation under section 1983). For the same reason, the absence of allegations which indicate Defendant Bastain's actions were objectively excessive in relation to the purpose of their interaction fail to state a Fourteenth Amendment claim because Plaintiff has not alleged "objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley*, 576 U.S. at 398.

Accordingly, Plaintiff's claims against Defendants Bastain, Kimberly, Rodriguez, Darnell and Navarro in count two of the Complaint are dismissed *sua sponte* for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1); *Watison*, 668 F.3d at 1112.

### 3. Count Three

Plaintiff alleges in count three that on or about September 18, 2021, he "was shoved out of his wheelchair" by Defendants San Diego County Sheriff's Deputies Holman and Lira, "causing plaintiff to endure severe muscle spasms throughout his body, exacerbated P.T.S.D. symptoms, exacerbated primary progressive multiple sclerosis symptoms, fear, mental and physical anguish." Doc. No. 1 at 4, 8. He was "loaded up on a stokes basket and onto a gurney" and taken to the infirmary, where he was placed on

the floor still in the stokes basket. *Id*. at 8. Plaintiff begged Defendant Carie, a Nurse Practitioner at the San Diego Jail, to call 911 but she refused. *Id*. He asked several times for medication to help alleviate his spasms, but Nurse Practitioner Carie refused and instructed the deputies to place Plaintiff in a side cell. *Id*. Defendant San Diego County Sheriff's Deputy Morra "picked up the foot end of the stokes basket, while the head end was still on the floor, [and] drug the plaintiff into a cell, then dropped the foot end of the stokes basket stating 'that's how you do that shit,' [which] caused Plaintiff to cry out with pain in his head, back and legs." *Id*. Defendant Nurse Practitioner Carie again denied Plaintiff's request for an ambulance and pain medication. *Id*. Several hours later Plaintiff was taken to the "hole," and several days later he was taken to an outside hospital where he stayed several weeks. *Id*. He submitted a grievance which was ignored by Defendant San Diego County Sheriff's Deputy Sergeant Madden who is "the direct supervisor of the deputies," and which was ignored by Defendant San Diego County Sheriff's Deputy Captain Darnell who "is responsible for employee training and direct supervision of subordinates." *Id*. at 2–3, 8.

With respect to the allegations that Defendants Holman and Lira removed Plaintiff from his wheelchair and placed him in a stokes basket and then onto a gurney in order to take him to the infirmary where Defendant Morra placed him on the floor in the basket, there are no allegations which plausibly suggest they did so maliciously and sadistically to cause him harm, *McMillian*, 503 U.S. at 6–7, or that their actions were "not rationally related to a legitimate governmental objective [such as providing medical care] or excessive in relation to that purpose," *Kingsley*, 576 U.S. at 398, so as to violate the Eighth or Fourteenth Amendments. Lacking allegations showing that Defendants were aware, or should have been aware, they were causing Plaintiff distress, or that their actions were excessive in relation their purpose of providing Plaintiff medical care, Plaintiff has not stated a claim.

Plaintiff next alleges that Defendant Nurse Practitioner Carie refused to call 911 or give Plaintiff medication to help alleviate the spasms and instructed the deputies to place

him in a side cell. The Eighth Amendment's prohibition on the infliction of cruel and unusual punishment "establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 101–03 (1976). "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, "a prison official must have a 'sufficiently culpable state of mind,'" that is, "one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 302–03). To the extent Plaintiff was a pre-trial detainee, he can plausibly allege a Fourteenth Amendment claim "by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley*, 576 U.S. at 398; *Gordon*, 888 F.3d at 1125 (holding that in order to state a § 1983 claim for unconstitutional conditions of confinement a pre-trial detainee must plausibly allege that: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved - making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused plaintiff's injuries").

Plaintiff's allegations of a serious medical need are sufficient to survive the screening required by 28 U.S.C. §§ 1915(e)(2) & 1915A(b). *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121; *Iqbal*, 556 U.S. at 678; *Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994) ("[I]ndicia of a 'serious' medical need include (1) the existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, (2) the presence of a medical condition that significantly affects an individual's daily activities, and (3) the existence of chronic or substantial pain."). However, allegations of differences of opinion over proper medical care, inadequate

medical treatment, medical malpractice, or even gross negligence by themselves do not rise to the level of an Eighth or Fourteenth Amendment violation. *See Farmer*, 511 U.S. at 835 ("[N]egligen(ce) in diagnosing or treating a medical condition" does not amount to deliberate indifference), quoting *Estelle*, 429 U.S. at 105-06 (holding that "an inadvertent failure to provide medical care," allegations that "a physician has been negligent in diagnosing or treating a medical condition," or "medical malpractice" do not state an Eighth Amendment claim and "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

      Plaintiff alleges that when he arrived at the infirmary Defendant Nurse Practitioner Carie refused to call 911 or give him medication to help alleviate the spasms. Plaintiff has not plausibly alleged that refusing his request to call 911 to report a medical emergency from inside a jail infirmary amounted to an action taken maliciously and sadistically to cause him harm, *McMillian*, 503 U.S. at 6–7, or that it amounted to an action which was "not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose," *Kingsley*, 576 U.S. at 398, so as to violate the Eighth or Fourteenth Amendments. The allegation that Nurse Practitioner Carie refused his request for medication to control his muscle spasms does not plausibly allege Carie had the authority to issue such medication or whether such medication was available. *See Toguchi*, 391 F.3d at 1058 (deliberate indifference shown where the chosen course of medical treatment was "medically unacceptable under the circumstances" and chosen "in conscious disregard of an excessive risk to the prisoner's health"); *Estelle*, 429 U.S. at 106 (holding that inadvertent failure to provide medical care, mere negligence or medical malpractice and differences of opinion over what medical treatment is proper, do not state an Eighth Amendment claim); *Farmer*, 511 U.S. at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence" and "more than ordinary lack of due care for the prisoner's interests or safety."); *Castro v. County of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016) ("A prison official cannot be found liable for denial of medical care . . . 'unless the official knows of and disregards an excessive risk to

inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'") (quoting *Farmer*, 511 U.S. at 837).

Plaintiff has also failed to state a claim against Defendant Sergeant Madden who he alleges is "the direct supervisor of the deputies," or against Defendant Captain Darnell who he alleges "is responsible for employee training and direct supervision of subordinates." Doc. No. 1 at 2–3, 8. Supervisory liability is not an independent cause of action under § 1983, and to state a claim against supervisory personnel Plaintiff must allege both an underlying constitutional violation and a sufficient causal connection between the supervisor's actions and the violation. *Starr*, 652 F.3d at 1207. "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "In a section 1983 claim, a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them." *Corales*, 567 F.3d at 570 (internal quote marks omitted); *see also Leer*, 844 F.2d at 633 ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.").

Plaintiff has failed to plausibly allege Defendants Madden and Darnell participated in, knew of, or failed to act to prevent, the alleged constitutional violations by Defendants Holman, Lira, Carie and Morra as necessary to state a claim for supervisor liability, because Plaintiff merely alleges they became aware after the fact of those alleged violations though grievance procedures. *See Iqbal*, 556 U.S. at 676–77 (rejecting argument that "a supervisor's mere knowledge of his subordinate's [unconstitutional actions] amounts to the supervisor's violating the Constitution"). Plaintiff has also failed to state a claim for failure to train because he has failed to plausibly allege individual acts

by the Defendants or "that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Rodriguez*, 891 F.3d at 802 (quoting *City of Canton*, 489 U.S. at 390).

Accordingly, Plaintiff's claims against Defendants Holman, Lira, Morra, Carie, Madden and Darnell in count three of the Complaint are dismissed *sua sponte* for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1); *Watison*, 668 F.3d at 1112.

### 4. Count Four

Plaintiff alleges in count four that on or about October 3, 2021, he fell twice and was taken to an outside hospital where he stayed for 35 days. Doc. No. 1 at 9. Upon arriving back at the San Diego County Jail, he was housed in a cell with black mold. *Id*. He filed grievances which were ignored and then moved to another cell with black mold, and his renewed grievance was ignored. *Id*. Plaintiff states he was exposed to Covid-19 but Defendant Captain Darnell ignored his complaints, and that he was hospitalized four times due to the conditions of confinement at the San Diego County Jail but Defendants Darnell, Navarro, Lovelace "and all other defendants had no care or concern for Plaintiff's health, safety or life." *Id*. He was eventually transferred to the George Bailey Detention Facility and housed in a medical module. *Id*. Legal documents and paperwork were removed from his personal property during the transfer and his claims regarding their loss were ignored. *Id*.

As noted above, the allegations regarding his grievances being ignored fail to state a claim. *Mann*. 855 F.2d at 640 ("There is no legitimate claim of entitlement to a grievance procedure."). The allegations Plaintiff was housed in cells which he later learned contained black mold also fail to state a claim. "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Although "subjection of a prisoner to lack of sanitation that is severe or prolonged can

constitute an infliction of pain within the meaning of the Eighth Amendment," the temporary imposition of such conditions does not state a claim absent allegations of a risk of harm. *Anderson v. County of Kern*, 45 F.3d 1310, 1314–15 (9th Cir. 1995). The allegations in the Complaint regarding placement in a cell with black mold fail to state a claim because they lack detail regarding their duration and severity or whether and to what extent they affected Plaintiff. *Id.*; *Johnson*, 217 F.3d at 731 ("The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred."); *see also Iqbal,* 556 U.S. at 678 (noting that a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"). They also fail to identify a Defendant who made the decision to place Plaintiff in the cell with the black mold. *See Leer*, 844 F.2d at 633 ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.").

Plaintiff alleges he was exposed to Covid-19 but Defendant "Captain Darnell ignored all complaints that Plaintiff submitted which adversely affected the Plaintiff's health and safety," and that he was hospitalized four times due to the conditions of confinement at the San Diego County Jail but Defendants Darnell, Navarro, Lovelace "and all other defendants had no care or concern for Plaintiff's health, safety or life." Doc. No. 1 at 9. These allegations are too conclusory to state a claim. *Iqbal*, 556 U.S. at 678 (the pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (quoting *Twombly*, 550 U.S. at 555).

Plaintiff's allegations of lost personal property and his submission of a claim which was ignored fail to state a claim for denial of due process. When a state provides an adequate post-deprivation remedy for the taking of property, through a state tort action for example, the existence of that remedy satisfies the requirements of due process. *Zinermon v. Burch*, 494 U.S. 113, 128 (1990). The Ninth Circuit has held that California law provides such a remedy. *Barrett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994).

Accordingly, Plaintiff's claims in count four of the Complaint against Defendants Darnell, Navarro and Lovelace are dismissed *sua sponte* for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1); *Watison*, 668 F.3d at 1112.

5. Count Five

In count five Plaintiff alleges that for a year from March 5, 2021, to March 9, 2022, Defendants Lieutenant Navarro and Captain Darnell housed him in cells with black mold. Doc. No. 1 at 10. He was locked down in a small cell with two other men "at times causing plaintiff's legs to become deconditioned," which is "the worst thing someone could do to someone with primary progressive multiple sclerosis." *Id*. He filed several grievances which were ignored. *Id*. Defendants Navarro and Darnell failed to provide Plaintiff with his daily newspaper subscription in retaliation for filing grievances and letters to outside agencies complaining of the conditions of confinement at the San Diego Jail. *Id*. Plaintiff states that for the three-year period from May 2019 to May 2022 he was denied access to the law library, the courts, legal assistance, photocopies and legal supplies, preventing him from having meaningful access to the courts and effectively litigating civil actions. *Id*.

The allegations that Defendants Navarro and Darnell housed Plaintiff in cells with black mold or under conditions that caused his legs to be deconditioned fail to state a claim because they do not plausibly allege these Defendants were aware the cells contained black mold or that Plaintiff was housed in a manner inconducive to the conditioning of his legs. Plaintiff has merely alleged in a conclusory manner that the Defendants were responsible for the decision to house him in those cells, and has failed to allege they were informed the cells were unhealthy or ignored a request to be rehoused. *See Gordon*, 888 F.3d at 1125 (in order to state a § 1983 claim for unconstitutional conditions of confinement a pre-trial detainee must plausibly allege that: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that

risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved - making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused plaintiff's injuries").

Plaintiff's allegations that Defendants Navarro and Darnell failed to provide him with his daily newspaper subscription in retaliation for filing grievances and sending letters to outside agencies complaining of the conditions of his confinement also fail to state a claim. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (2005). "Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison*, 668 F.3d at 1114. However, the allegations in the Complaint do not plausibly allege a causal connection between the deprivation of newspapers and Plaintiff's action in filing grievances. *See id.* (a prisoner must allege a retaliatory motive, that is, "a causal connection between the adverse action and his protected conduct"). Plaintiff's allegation of retaliation is entirely conclusory. *See Iqbal*, 556 U.S. at 678 (noting that a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"); *Corales*, 567 F.3d at 568 (evidence of retaliation includes: "(1) evidence of proximity in time between the protected speech and the alleged retaliatory decision; (2) evidence that the defendant expressed opposition to the speech; or (3) evidence that the defendant's proffered reason for the adverse action was pretextual").

Finally, Plaintiff states that for three years from May 2019 to May 2022 he was denied access to the law library, the courts, legal assistance, photocopies and legal supplies which prevented him from having meaningful access to the courts and effectively litigating civil actions. *Id*. Prisoners do not have a constitutional right to

access to a law library or legal assistance.  *See Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that because inmates lack "an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense"). Rather, in order to state a claim denial of access to the courts, a prisoner must establish that he has suffered an "actual injury," that is, "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348–49; *see also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (defining actual injury as the "inability to file a complaint or defend against a charge").

Plaintiff fails to include any factual allegations in the Complaint which plausibly allege an actual injury supporting his claim of denial of access to the courts.  *See Lewis*, 518 U.S. at 346 (holding that "the injury requirement is [limited to those tools] that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration").  In addition, Plaintiff has failed to allege facts sufficient to describe how any action by any Defendant has impaired his ability to visit the law library or interfered with his ability to litigate a claim, and has failed to identify any Defendant he seeks to hold responsible for the denial of his right of access to the courts. *See Estate of Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999) ("Causation is, of course, a required element of a § 1983 claim."); *Leer*, 844 F.2d at 633 ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.").

Accordingly, Plaintiff's claims in count five of the Complaint against Defendants Darnell and Navarro are dismissed *sua sponte* for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915A(b)(1); *Watison*, 668 F.3d at 1112.

## C. Leave to Amend

In light of Plaintiff's *pro se* status, the Court grants him leave to amend his pleading to attempt to sufficiently allege a § 1983 claim. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

## II. CONCLUSION AND ORDERS

Good cause appearing, the Court *sua sponte* **DISMISSES** all claims in Plaintiff's Complaint against all Defendants without prejudice and with leave to amend for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b). The Court **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file a First Amended Complaint that cures the deficiencies of pleading noted in this Order. Plaintiff's First Amended Complaint must be complete by itself without reference to any previous version of his Complaint. Any Defendants not re-named and any claims not re-alleged in the First Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

**IT IS SO ORDERED**.

Dated: February 27, 2023

HON. MICHAEL M. ANELLO
United States District Judge